UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**WILLIAM DOUGLAS CARROLL**                                   CASE NO. 08-10756
**CAROLYN CARROLL**

DEBTORS                                                       CHAPTER 7

SUBSTANTIVELY CONSOLIDATED WITH

IN RE:

**REDPEN PROPERTIES, LLC**                                    CASE NO. 08-10933

DEBTOR                                                        CHAPTER 7

**MEMORANDUM OPINION**

Debtors William and Carolyn Carroll are no strangers to this court. Not only have they filed two bankruptcy cases; two companies they controlled have sought relief here.[1] Nor are the Carrolls novices in litigation: they have squandered the time and resources of several courts over nearly fifteen years.[2]

---

[1] As its managing members the Carrolls caused Charis Hospital, L.L.C. to file chapter 7 in March 2001 (Case No. 01-10616) and in September 2001 filed their own individual chapter 11 case (Case No. 01-12330). The Carrolls' individual case was dismissed in May 2002 as part of the settlement of an adversary filed in the Charis case (Adv. No. 01-1049). Another company the debtors controlled, Charis Partial Hospital, Inc. ("Charis Partial") (Case. No. 01-12038), filed a chapter 11 case in August 2001, and later converted to chapter 7.

[2] Mr. and Mrs. Carroll filed or were parties to several lawsuits relating to their own and Charis's 2001 bankruptcy cases. After Bank One sued the Carrolls in state court on their guaranty of loans to Charis and Charis Partial, the Carrolls counterclaimed and also sued Bank One, N.A. (JP Morgan Chase Bank's predecessor) (Adv. No. 02-1004) and others in this court for lender liability claims (breach of contract, fraud, negligence and breach of good faith and fair dealing). The liquidator for Charis removed Bank One's state court lawsuit and the Carrolls' counterclaim to this court, arguing that the Carrolls' claim against the bank belonged to the liquidator (Adv. No. 02-1079). Finally, after filing this case, the debtors removed to this court yet another lawsuit they had filed in state court against Chase in which they had sought to annul the bank's judgment against them on the guaranties (Adv. No. 08-1132).

Within three months after the debtors filed this case as a chapter 13, the case converted first to chapter 11 and then to a chapter 7 liquidation.[3] RedPen Properties, L.L.C. ("RedPen"), a Louisiana limited liability company whose only members are William and Carolyn Carroll, filed chapter 7 six weeks after the Carrolls. The court substantively consolidated the two cases on October 31, 2014.[4]

This, the latest of the Carrolls' relentless and ultimately unsuccessful efforts to keep assets from their creditors, centers on the debtors' attempt to exempt from the bankruptcy estate personal property comprising household goods and furnishings. Bankruptcy Code section 522(g) renders the property ineligible for exemption.

**Factual and Procedural Background**

Before filing the bankruptcies the Carrolls embarked on a brazen scheme to shield virtually all their assets by transferring them to their children and RedPen,[5] a company that Carolyn Carroll testified the couple had formed to hold all their assets in order to protect them from creditors.[6] A June 2002 act of exchange furthered their plan by transferring to RedPen a long list of "antiques and collectibles."[7] RedPen's June 4, 2005 act of exchange transferred the

---

[3] The debtors converted their case from chapter 13 to chapter 11 after JP Morgan Chase Bank ("Chase") moved to dismiss or convert the case because the Carrolls' debt exceeded levels permitted in chapter 13 cases. See 11 U.S.C. §109(e). Chase then moved to convert the chapter 11 case to a chapter 7 liquidation, or alternatively, to appoint a chapter 11 trustee. The court eventually converted the case to a chapter 7 liquidation.

[4] October 31, 2014 order (P-614). The effect of substantive consolidation is that all assets belong to the consolidated debtors, and the assets are "treated as if they belong to one entity." *In re Babcok & Wilcox Co.,* 250 F.3d 955, 959 fn.5 (5th Cir. 2001). Thus, which debtor owns an asset has no bearing on this opinion though RedPen, as a limited liability company, is not entitled to claim any exemptions. *See* 11 U.S.C. §522(b)(1): "[A]n *individual* debtor may exempt from property of the estate…."

[5] The court's October 31, 2014 Memorandum Opinion consolidating the Carroll and RedPen bankruptcy cases (P-611) outlines the details and chronology of the many transfers.

[6] Deposition of Carolyn Carroll, August 3, 2010 in Adv. Nos. 09-1096/09-1097, p. 36, ll. 12-25.

[7] June 20, 2002 Act of Exchange, P-74, pp. 88-93 in the record of *Alonso, et al. v. Abide, et al.*, Civil Action No. 11-702, United States District Court for the Middle District of Louisiana. The court takes judicial notice of the record of the district court case. *See Antioch Co. Litigation Trust v. Hardman*, 438 B.R. 598, 610 (S.D. Ohio 2010),

2

very same antiques and collectibles to the Carrolls' daughters, Pamela Alonso and Cynthia O'Neal, in exchange for interests in the company.[8] The same day the Carrolls also signed a donation *inter vivos* that purported to donate to Alonso and O'Neal an extensive schedule of personal property.[9]

Having seemingly conveyed away their own and RedPen's interests in a wide range of property long before bankruptcy, the Carrolls further advanced their scheme by filing misleading schedules in this bankruptcy in June 2008. The schedules reflected that the Carrolls owned only a residence, some clothing, personal jewelry and a car. The debtors also signed schedule B, declaring under penalty of perjury that they owned no household goods or furnishings.[10] The Carrolls' Statement of Financial Affairs notably reflected that they held no property belonging to others,[11] nor did the debtors disclose that they owned any movable property located at their residence[12] when questioned under oath at two creditor meetings.[13] Both debtors also swore that the information in their schedules was correct.

---

quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d, 736, 738 (6th Cir. 1980) ("Federal courts may take judicial notice of proceedings in other courts of record.")

[8] June 4, 2005 Act of Exchange, Exhibit T-37 admitted at the November 21, 2014 hearing on this objection.

[9] June 4, 2005 Donation Inter Vivos, Exhibit T-36.

[10] Schedules A and B (P-16, pp. 3-7 in Case No. 08-10756).

[11] Statement of Financial Affairs, Question 14 (P-16, p. 21 in Case No. 08-10756).

[12] Transcript of June 30, 2008 Meeting of Creditors, Exhibit T-42 and transcript of September 23, 2008 Meeting of Creditors, Exhibit T-43. At the September 2008 meeting, Carolyn Carroll stated the household goods were listed in the RedPen case. Exhibit T-43, pp. 14-15, ll. 22-25 and 1-17. At the July 29, 2008 RedPen meeting of creditors, the debtors' attorney stated that the company owned household furnishings that were located in the Carrolls' residence. Transcript of July 29, 2008 Meeting of Creditors, Exhibit T-44, p. 21, ll. 6-13. William Carroll testified at that meeting that the household furnishings were items the family collected over time. Exhibit T-44, p. 22. ll. 1-16.

[13] The first creditor meeting was conducted while the case was a chapter 13 proceeding. Another meeting of creditors took place after the case converted to chapter 7.

3

The debtors claimed exemptions available under Louisiana law only for the immovable property, clothing, jewelry and an automobile.[14]

In contrast, RedPen's original schedules reflected that it owned assets including a 5-acre tract of land, an M-35 Bonanza airplane and $8,000 in household goods and furnishings. RedPen's listing of the household movables is brief, comprising only a vague description of the items (e.g., "pair love seats … sofa & matching chairs … various lamps … writing table … .")[15]

The Carrolls first claimed to own household goods and furnishings in this case in amended schedules filed September 6, 2011 – more than three years after they filed bankruptcy.[16] The exhibit to their schedule B lists essentially the same household movables RedPen listed in its schedules, with similarly vague descriptions, despite the extensive and very descriptive lists of movable items attached as exhibits to the 2005 donation *inter vivos* and act of exchange.[17] Also at this time, the Carrolls first disclosed in their response to Question 14[18] on an amended Statement of Financial Affairs that they held $147,500 in "family heirlooms" that they claimed belonged to Alonso and O'Neal.

---

[14] Schedule C (P-16, p. 8 in Case No. 08-10756).

[15] Schedules A and B (P-23, pp. 3-6 in Case No. 08-10933).

[16] Amended schedules B (P-256, p. 2 and exhibit B-4 in Case No. 08-10756).

[17] On the court's order, the Carrolls again amended their schedules B and C on January 26, 2012 to provide photographs of the household items they claimed as exempt in September 2011 (P-256 in case No. 08-19756), as well as a few more movables not appearing in earlier versions of the schedules. Amended schedules B and C (P-403 in Case No. 08-10756). This listing is still far short of the number of movables on the exhibits attached to the 2005 transfer documents. *See* Exhibits T-36 and 37 admitted at the November 21, 2014 hearing.

[18] Amended statement of financial affairs (P-256, p. 16 in Case No. 08-10756).

In these amended schedules, the Carrolls sought to exempt from the bankruptcy estate the household goods and furnishings they belatedly listed, relying on La. R.S. 13:3881(A)(4)(a).[19] The exemption claim triggered the trustee's objection.

Alonso and O'Neal later sued the trustee for a judgment declaring that they became lawful owners of the movables through the 2005 donation *inter vivos* and act of exchange.[20] The adversary proceedings were consolidated and after the district court withdrew the reference of the lawsuit,[21] it concluded that the donation *inter vivos* was a nullity; the act of exchange was a simulation; and that neither document produced any effect between the parties.[22] As a result, it held that the movable property that was the subject of the donation and exchange belongs to the bankruptcy estates of debtors RedPen and the Carrolls.[23]

## Law and Analysis

Any entity possessing property of a debtor that the trustee may use or sell "shall deliver to the trustee … such property …." 11 U.S.C. §542(a). Failing voluntary delivery of the property, a trustee may employ section 542(a) to recover the property for the benefit of the bankruptcy estate.

---

[19] Amended schedule C (P-256, p. 9 in Case No. 08-10756). Bankruptcy Code section 522(b)(3) allows debtors to exempt from the bankruptcy estate any property that is exempt under federal or state law. Louisiana has chosen to "opt out" of the federal exemptions; thus debtors in Louisiana may exempt only the items listed in La. R.S. 13:3881 and other statutes not relevant to this contested matter.

[20] *Alonso, et al. v. Abide, et al.*, Adv. No. 09-1096 and *Alonso, et al. v. Abide, et al.*, Adv. No. 09-1097.

[21] *Alonso, et al. v. Abide, et al.*, Civil Action No. 11-702 (P-8).

[22] *In re RedPen Properties, L.L.C.*, 2013 WL 3293635 (M.D. La. June 28, 2013) at *8, 12, *aff'd,* 568 Fed. Appx. 338 (5th Cir. 2014). The judgment is now final and not subject to further appeal.

[23] *Redpen Properties*, 2013 WL 3293635 at *13. The district court did not assign ownership of any specific piece of movable property to either debtor. Which debtor owns the movable assets has no bearing on this opinion though because RedPen, as a limited liability company, is not entitled to claim any exemptions. *See* 11 U.S.C. §522(b)(1): "[A]n *individual* debtor may exempt from property of the estate…."

The Carrolls' effort to exempt the property the trustee recovered[24] brings into play 11 U.S.C. §522(g). That Bankruptcy Code section allows debtors to exempt property transferred before bankruptcy that the trustee recovers under any of several Bankruptcy Code sections including section 542 *but only* if –

>   (1) (A) such transfer was not a voluntary transfer of such property by the debtor; and
>
>   (B) the debtor did not conceal such property ….

The evidence established that 11 U.S.C. '522(g) prevents William and Carolyn Carroll from claiming the exemption.[25]

*(1) The Carrolls Voluntarily Sought to Transfer the Movables to their Daughters*

William Carroll readily admitted at the November 2014 hearing on the exemption objection that he and his wife voluntarily sought to transfer the movables to their daughters.[26] His deposition testimony, as well as that of Pamela Alonso and Cynthia O' Neal, supports a finding and conclusion that the transfers were voluntary. Specifically, Mr. Carroll testified that he and his wife gave his daughters the property listed on the exhibits to the donation *inter vivos* and the act of exchange.[27] Alonso's deposition testimony corroborates this finding. She testified that her mother asked her and her sister to sign documents that gave them everything at the

---

[24] Section 522(g) does not require that the trustee actually *initiate* a lawsuit to recover disputed property; the trustee need only take action that leads to recovery for the estate. *See In re Glass*, 60 F.3d 565, 568 (9th Cir. 1995); *In re Hicks*, 342 B.R. 596, 600 (Bankr. W.D. Mo. 2006). The trustee's defense of Alonso and O'Neal's lawsuit for a declaration that the movables did not belong to the Carroll and RedPen bankruptcy estates satisfies the statute.

[25] This court could not take up the exemption claim until the district court resolved the validity of the donation *inter vivos* and act of exchange and concluded that the debtors had an interest in the property they sought to exempt. The district court's findings in *RedPen Properties* make plain that the household goods, furnishings, antiques and collectibles listed in the June 2005 donation and exchange belong to either RedPen or the Carrolls.

[26] Transcript of November 21, 2014 hearing (P-648, p. 42, ll. 23-25; p. 43, ll. 1-12).

[27] Transcript of August 3, 2010 deposition of William Carroll, Exhibit T-33, p. 134, ll. 17-24.

6

Carroll residence that was "not real estate and [sic] not tied down."[28]  O'Neal's testimony validates her sister's, indicating that her parents gave the sisters all the items at the Carrolls' home.[29]

The Carrolls cannot credibly dispute that they voluntarily undertook the ineffective transfers to Alonso and O'Neal.

### (2) The Carrolls Concealed Their Ownership of the Movables

The Carrolls next argue that they did not conceal the movable property because it was in plain sight at their former residence and eventually disclosed on their amended bankruptcy schedules.  The undisputed facts surrounding the debtors' exemption claim belies their argument; indeed, they suggest that the Carrolls concealed their ownership of the property as long as they could.

Misrepresentations regarding the property a debtor is seeking to exempt are tantamount to concealment.  The principle underlying application of section 522(g) was best expressed in *In re Park*, 246 B.R. 837, 840-41 (Bankr. E.D. Tex. 2000)–

> [a] debtor may not claim as exempt property which he knowingly concealed and failed to disclose to [sic] trustee which normally would be exempt had it been properly scheduled and claimed. To allow the debtor to claim exemptions out of such property would contravene the intentions of Congress set forth in section 522(g)(1) of the Bankruptcy Code.

The debtor in *Park* sought to exempt personal property worth more than $15,000 that he disclosed to the court and creditors only on a fourth set of amended schedules.  The court disallowed the exemptions for all the items.  *Id*. at 841.  *See also In re Bidofsky*, 57 B.R. 883, 898 (Bankr. E.D. Mich. 1985) (debtors who misled the trustee about the existence of two savings

---

[28] Transcript of August 4, 2010 deposition of Pamela Alonso, Exhibit T-34, p. 36, ll. 12-16; p. 37, ll. 12-16.

[29] Transcript of August 5, 2010 deposition of Cynthia O'Neal, Exhibit T-35, p. 27, ll. 8-18.

accounts concealed the accounts for purposes of section 522(g)); *In re St. Angelo*, 189 B.R. 24, 27 (Bankr. D. R.I. 1995) (debtor's failure to disclose a pending personal injury claim despite having filed schedules in three separate bankruptcies, defeated his exemption claim for the concealed settlement proceeds).

The Carrolls tried to transfer – indeed, thought they had succeeded in transferring – antiques, collectibles and household goods and furnishings to their daughters in June 2005. Yet in their 2010 depositions Mr. Carroll, Alonso and O'Neal all testified that the movables remained in the Carrolls' residence when they filed bankruptcy three years later in 2008. The Carrolls failed to disclose in the statement of financial affairs or anywhere else in the record that they held property they now claim belonged to their daughters for more than three years before filing their bankruptcy petition and related schedules in this court. They directly misrepresented this in their response to a question on the statement of financial affairs. Nor did they disclose any household movables during their sworn testimony in two creditor meetings, at the same time falsely swearing that their answers in the documents filed with the court were truthful. Instead, the Carrolls disclosed their interest in the property for the first time only in September 2011, when in response to the court's order approving the sale of their residence they amended the schedules to disclose that they had owned household goods and furnishings when they filed chapter 13.

Even when William and Carolyn Carroll eventually scheduled the household items and even after the court ordered further amendment and photographs of the movables, their description of the property was vague and misleading, despite the undisputed existence of lengthy and very specific lists of the movables. At the same late date they belatedly claimed in

8

an amended schedule C that the possessions were exempt from the bankruptcy estate by virtue of 11 U.S.C. '522 and La. R.S. 13:3881.

The Carrolls unpersuasively argue that they erroneously listed the movable property on the RedPen schedules and did not know before 2011 that they could amend the schedules in their own case to properly claim the movables as their own property. The debtors' own records belie this contention. Specifically, an October 30, 2008 fax from the Carrolls' bankruptcy attorney at that time asked the debtors whether it was appropriate to amend any of their schedules – and in particular their response to question 14 of the statement of financial affairs, which called for the debtors to disclose whether they were holding property for someone else.[30]

The Carrolls maintain that they did not hide the property from the trustee. Specifically, their second memorandum supporting the exemptions points out that the movables have always been visible at their former residence.[31] Indeed, the trustee and the attorney for the Internal Revenue Service stated on the record at hearings that the Carroll residence and "barn" were crowded with innumerable pieces of movable property.[32] Their seeming candor comes too late, in light of their prior efforts to put these assets beyond the reach of the trustee. The Carrolls fruitlessly tried to compel the trustee to abandon this property[33] and twice tried unsuccessfully to have the court remove the trustee in response to her attempts properly to administer the movable assets of the estate.[34] The Carrolls' actions support a finding and conclusion that beginning even

---

[30] Exhibit T-23, pp. 1-2.

[31] Second Memorandum in Support of Exemptions (P-642).

[32] Both the trustee as well as the Assistant United States Attorney representing the Internal Revenue Service made these statements at the October 1, 2014 hearing on the Carrolls' motion to abandon property.

[33] Motion to Abandon Property Pursuant to 11 U.S.C. §554 (P-548).

[34] Motion to Have Chapter 7 Trustee Removed, (P-166); Motion to Remove Trustee for Failure to Perform Fiduciary Duties, Misconduct and Gross Mismanagement of Affairs (P-543). The Carrolls aggressively have

before their bankruptcy filing and continuing throughout their case, these debtors have continuously tried, by various techniques, to prevent the administration of their assets for the benefit of their creditors.

The Carrolls received their discharge on April 8, 2009 but the administration of their estate has stretched over almost five years. This prolonged process stemmed largely from their efforts, in concert with their daughters, wrongfully to keep their property out of the trustee's hands. Their machinations have cost them the exemption they sought to claim.

## Conclusion

The record supports a finding and conclusion that William and Carolyn Carroll voluntarily transferred to their daughters the movable property the district court held was bankruptcy estate property; and that they concealed their ownership of the property as long as they possibly could. Therefore, Bankruptcy Code section §522(g)(1) bars their exempting all the movable property.

Baton Rouge, Louisiana, March 30, 2015.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

opposed virtually every action taken by the trustee to administer this case. The court's November 21, 2014 oral ruling on the second motion to remove trustee set out in detail the Carrolls' acts delaying the progress of this case. Transcript of November 21, 2014 hearing (P-648, p. 10, line 24 through p. 29, line 16).